J-S19015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.H.Y., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.Y.C., MOTHER | No. 1824 EDA 2015 |

Appeal from the Decree May 15, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000292-2013

BEFORE: BENDER, P.J.E., STABILE, J. AND MUSMANNO. J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 04, 2016**

D.Y.C. ("Mother") appeals from the decree entered May 15, 2015, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated her parental rights to her minor daughter, L.H.Y. ("Child"), born in September of 2010.[1, 2]  Additionally, Mother's counsel has filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Upon review, we grant counsel's petition to withdraw and affirm the termination decree.

---

[1] The trial court entered a separate decree that same day terminating the parental rights of Child's father, W.Y. ("Father").  Father filed an appeal from that decree, which was docketed at 1951 EDA 2015.  On December 3, 2015, this Court entered a *per curiam* order dismissing Father's appeal for failure to file a brief.

[2] We note that the certified record in this case was originally due on July 15, 2015.  However, this Court did not receive the record from the trial court until well past the due date, on September 22, 2015.  As a result, the briefing schedule in this matter was delayed by over two months.

The trial court summarized the factual and procedural history of this matter as follows.

Mother has had a history with the Department of Human Services ("DHS") since December 21, 2007. On November 30, 2009, Mother had her parental rights terminated as to another child, a sibling of [Child.] [In September of 2010], Mother gave birth to . . . Child at Temple University Hospital. Mother tested positive for Benzodiazepines and Opiates and was not aware of her pregnancy until she went into labor. At Child's birth, it was discovered that Child suffered from severe neurological problems. As a result the Child was transferred to St[.] Christopher's Hospital for Children for further treatment. On October 22, 2010, DHS received a General Protective Services ("GPS") report alleging that Child suffered a severe infection and a severe hemorrhage, which caused Child's brain damage. The report further alleged that Mother's use of drugs during pregnancy contributed to Child's condition. In October of 2010, DHS requested [Father] to apply for custody. However, [F]ather failed to do so. On November 11, 2010, DHS implemented medical In-Home Protective Services ("IHPS"). Mother would have visits with the Child only under supervision. Child was discharged from the hospital on November 12, 2010[,] and Father further agreed to ensure Child's attendance [at] all medical appointments and [ensure the reception of] all the necessary medication. On December 13, 2010, DHS learned that Child was infected with scabies and that on December 16, 2010[,] Child missed a medical appointment. On December 17, [2010,] DHS obtained an [order of protective custody ("OPC")]. At the Shelter Care hearing, on December 20, 2010, the OPC was lifted and Child was committed tempora[ri]ly to DHS. On December 30, 2010, Child was adjudicated dependent. The trial court awarded Mother with supervised visits with the Child. Mother was also referred to the Clinical Evaluation United ("CEU"), to the Achieving Reunification Center ("ARC") and for a parenting capacity evaluation.

On March 24, 2011, at a Permanency Review hearing, the trial court took notice that Mother had not visited the Child, and also found Mother to be non-compliant with her [Family Service Plan ("FSP")] objectives. The trial court granted Mother bi-weekly supervised visits. At [the] next Permanency Review hearing, on August 8, 2011, Mother was [again found] non-compliant with

her FSP objectives. On September 8, 2011, a FSP was held but Mother did not attend. Mother's objectives were to maintain recovery from drug and alcohol problems by participating in [a] drug/alcohol evaluation, to comply with treatment recommendations, and to sign an authorization to allow DHS to obtain copies of [the] evaluation and progress report. Mother also had to maintain a relationship with her Child by attending her visits and keeping regular contact with the Child and the social worker. Additionally, Mother had to provide adequate living conditions to the Child by locating and occupying suitable housing. Mother also had to stabilize her mental health problems by participating in a mental health evaluation and complying with all the treatment recommendations. Furthermore, Mother had to sign an authorization to allow DHS to obtain copies of her mental health progress. Finally, Mother also had to attend a parenting capacity evaluation to determine her ability to parent her Child. At a Permanency Review hearing, on December 1, 2011, Mother's compliance with her FSP improved to moderate. Mother' visitations remained supervised and she was ordered to sign releases of information from JFK Community Mental Health Center ("JFK"). DHS was also ordered to refer Mother for a parenting capacity evaluation.

On February 9, 2012, the trial court granted a continuance. On April 30, 2012, at a Permanency Review hearing, Mother was found in moderate compliance with her FSP. The trial court further found that Mother received mental health treatment though JFK and completed parenting classes through JFK. Mother was also ordered by the trial court to provide names of family members. On June 11, 2012, the trial court granted a continuance as requested by DHS. . . . On July 5, 2012, Mother was found minimally compliant with her FSP objectives. The trial court found that Mother was attending JFK therapy. However, the trial court also found that Mother refused to attend the parenting capacity evaluation ordered by the court and Mother had not obtained suitable housing. On September 20, 2012, the trial court issued a continuance order.

On January 9, 2013, at a Permanency Review hearing, the trial court found that Mother had made only one visit, for 10 minutes, since November 29, 2012. On June 3, 2013, at a Permanency Review hearing, the trial court found Mother in moderate[] compliance with her FSP. On October 9, 2013, and January 14, 2014, the trial court granted a continuance. On February 7, 2014, Mother was found in non-compliance with her FSP. On

- 3 -

July 30, 2014, Mother was found in minimal compliance with her FSP. On July 30, 2014, a Goal Change status hearing took place. . . .

Trial Court Opinion, 9/18/2015, at 1-3.

On May 16, 2013, DHS filed a petition to terminate Mother's parental rights to Child involuntarily. A termination hearing was held on September 25, 2014, and March 10, 2015.[3] During the hearing, the trial court agreed to hold its decision in abeyance in order to give Mother the opportunity to relinquish her parental rights voluntarily. N.T., 3/10/2015, at 4. Court reconvened on May 15, 2015, at which time it was determined that Mother had not relinquished her parental rights. Thus, the court entered its decree terminating Mother's parental rights to Child involuntarily. Mother timely filed a notice of appeal on June 15, 2015, along with a concise statement of

_____

[3] The trial court states in its opinion that the termination hearing took place on September 25, 2014, December 19, 2014, and March 10, 2015. Trial Court Opinion, 9/18/2015, at 3. Our review of the record indicates that the termination hearing commenced on September 25, 2014, and that the hearing was scheduled to continue on January 29, 2015. N.T., 9/25/2014, at 50; Permanency Review Order – Amended, 9/25/2014; Continuance Order, 9/25/2014. The court then held a status hearing on December 19, 2015. Notice of Status Hearing, 12/2/2014 (stating, "this cas[e] has been rescheduled from 1/29/15 to 12/19/14 for status hearing only") (capitalization omitted); Permanency Review Order, 12/19/2014. The termination hearing was continued to February 9, 2015, and then continued again to March 10, 2015. Permanency Review Order, 12/19/2014; Continuance Order, 2/9/2015.

errors complained of on appeal.[4]   Mother's counsel filed an **Anders** brief and a petition to withdraw on October 22, 2015.

Before reaching the merits of Mother's appeal, we must first address counsel's request to withdraw.  **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)).  "In **In re V.E.**, 417 Pa.Super. 68, 611 A.2d 1267 (1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights."  **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014).  To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[4] We note that Mother had thirty days to appeal the trial court's termination decree, meaning that her notice of appeal would normally be due by June 14, 2015.  **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken.").  However, because June 14, 2015, was a Sunday, Mother's notice of appeal was timely filed on Monday, June 15, 2015.  **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel has filed a petition to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel also has filed a brief that includes a summary of the history and facts of the case, issues raised by Mother, and counsel's assessment of why those issues are meritless, with citations to relevant legal authority. Counsel has attached to his brief a copy of his

- 6 -

letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se*.[5]  Accordingly, counsel has substantially complied with the requirements of **Anders** and **Santiago**.  **See Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the **Anders** requirements is sufficient).  We, therefore, may proceed to review the issues outlined in the **Anders** brief.  In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issues for our review:

---

[5] We note that counsel's letter to Mother is barely compliant with the requirements of **Anders**.  Counsel's letter indicates only that he has filed an **Anders** brief, and that, "you are advised of your right to retain new counsel, proceed pro se or raise any additional points that she [*sic*] deems worthy of the court's attention."  Letter, 10/21/2015 (emphasis omitted).  Counsel does not indicate in the letter that he is attempting to withdraw as counsel, nor does he explain what an **Anders** brief is.  Counsel's letter is also potentially misleading given the typographical error noted *supra*.  Had Mother received only this letter from counsel, it is unlikely that she would understand what was happening.  Nonetheless, we conclude that counsel has substantially complied with the requirements of **Anders** because Mother was provided with a copy of counsel's **Anders** brief, which contains a more detailed description of the **Anders** procedure, and explains counsel's decision to withdraw.

[1.] Whether DHS has established that by clear and convincing evidence the basis for terminating Mother's parental rights under 23 Pa.C.S.[A.] [§] 2511(a)(1), (2), and (5)?[6]

[2.] Whether the trial court's decision to change the goal for Child to adoption was in best interest of Child?[7]

***Anders*** brief at 18.

We consider these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

_____

[6] Counsel is incorrect in stating that Mother's parental rights were terminated pursuant to Sections 2511(a)(1), (2), and (5) of the Adoption Act. As discussed in greater detail, *infra*, Mother's parental rights were terminated pursuant to Sections 2511(a)(2), (5), (8), and (b).

[7] While Mother's counsel suggests that Mother would like to challenge the change of Child's permanency goal to adoption, counsel does not discuss the change of Child's permanency goal in his brief. Counsel's ***Anders*** brief does include a section entitled, "Whether the trial court's decision to change the goal for the Child to adoption was in the best interest of Child?" However, that section discusses the trial court's decision to terminate Mother's parental rights pursuant to Section 2511(b). ***See Anders*** brief at 26. We also note that Mother has failed to preserve a challenge to the trial court's goal change order for our review. Mother did not file a notice of appeal from the court's goal change order. Mother did not mention the goal change order in her notice of appeal from the court's termination decree, nor did she challenge the court's goal change order in her concise statement of errors complained of on appeal. Thus, we consider only the decree terminating Mother's parental rights.

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b).[8] We need only agree

---

[8] At the conclusion of the termination proceedings, the trial court announced that it would terminate Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b). N.T., 5/15/2015, at 4. The court then entered its termination decree, which indicated that Mother's parental rights were terminated pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). On
*(Footnote Continued Next Page)*

with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).  Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

August 18, 2015, the court entered an order indicating that it was amending the termination decree by removing Section 2511(a)(1).  The court explained that Section 2511(a)(1) was included in the termination decree by mistake, and that it did not terminate Mother's parental rights pursuant to that section.

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court found that Mother has been incapable of providing Child with the essential parent care, control, and subsistence necessary for her mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity. Trial Court Opinion, 9/18/2015, at 4-6. The court emphasized Mother's failure to comply with her FSP objectives, including Mother's failure to obtain drug and alcohol and mental health treatment, Mother's refusal to complete a parenting capacity

evaluation, Mother's lack of stable housing, and Mother's inconsistent visitation with Child. *Id.*

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). On the first day of the termination hearing, September 25, 2014, DHS presented the testimony of Ms. Zakia Snead. Ms. Snead testified that she is a foster care social worker at Jewish Family and Children Services, and that she was assigned to this matter on June 12, 2013. N.T., 9/25/2014, at 7, 32. Ms. Snead explained that an Individual Service Plan ("ISP") was prepared for Mother, and that Mother's ISP objectives included attending parenting classes, and obtaining drug and alcohol and mental health treatment. *Id.* at 16-17. Ms. Snead reported that Mother has not completed any of her ISP objectives. *Id.* at 16, 18.

Ms. Snead explained that Mother completed a parenting class "early on," but she believed that it would be beneficial for Mother to attend a second class. *Id.* at 41. With respect to drug and alcohol and mental health treatment, Ms. Snead stated that Mother previously was attending mental health treatment at the JFK Community Mental Health Center. *Id.* at 17. Mother left JFK in August of 2014. *Id.* at 17, 41-42. Mother also was referred to the Wedge Recovery Centers for dual diagnosis treatment. *Id.* at 16-17. However, the Wedge was reporting that Mother was noncompliant. *Id.* at 17. Ms. Snead did not know if Mother was attending mental health

treatment elsewhere. *Id.* at 18. Ms. Snead further observed that Mother did not have housing. *Id.* at 16. Ms. Snead noted that Mother changes residences "every two months," and that Mother had just provided her with a new address on the day of the termination hearing. *Id.*

Finally, Ms. Snead testified that she is responsible for scheduling visits between Mother and Child. *Id.* at 7-8. At the time of the termination hearing, Mother was offered biweekly supervised visits for one hour each. *Id.* at 8, 40-41. Since Ms. Snead became involved in this matter, Mother had attended only seven of the fifty-four visits that had been offered to her. *Id.* at 9. Ms. Snead explained that Mother called her "constantly" from October of 2013 until February of 2014. *Id.* Mother reported that she would not be attending visits because Father was physically abusing her, and she was hiding from him. *Id.* Since February of 2014, Mother has been calling and confirming her attendance at visits, but then not showing up. *Id.* Ms. Snead described one occasion, in July of 2014, during which Mother became very agitated during a visit. *Id.* at 13-14. "[Mother] became aggressive. She started cursing, [and] throwing books." *Id.* at 13.

On March 10, 2015, the trial court heard the testimony of DHS social worker, Jillian Johnston. Ms. Johnston testified that she was assigned to this matter in October of 2013. N.T., 3/10/2015, at 9. Ms. Johnston explained that Mother's current FSP objectives "include mental health treatment and following through with all treatment recommendations, for her to continue

and complete [a] parenting capacity evaluation, for [Mother] to maintain suitable housing, for [M]other to comply with court-ordered CEU recommendations, and for [M]other to maintain visitation . . . ." *Id.* at 17.

With respect to Mother's mental health, Ms. Johnston testified that Mother "has serious mental health concerns . . . that need to be addressed on a consistent basis, to include therapy and medication management." *Id.* at 19. Ms. Johnston stated that Mother attended mental health treatment at COMHAR from October of 2014 until December of 2014. *Id.* at 18. However, Mother informed Ms. Johnston in January of 2015 that she was no longer attending treatment. *Id.* at 46. Ms. Johnston noted that Mother has a tendency to start therapy and then stop, because Mother believes that she does not need it. *Id.* at 19. Similarly, with respect to drug and alcohol treatment, Ms. Johnston testified that Mother was evaluated at the CEU, and that it was recommended that Mother attend an outpatient dual diagnosis program. *Id.* at 26-27. Mother reported to Ms. Johnston that she attended treatment "a couple times," but then left the program. *Id.* at 27. Mother claimed that she did not have drug and alcohol issues, and therefore did not need drug and alcohol treatment.[9] *Id.*

_____

[9] During the hearing, counsel for Mother indicated that Mother's last positive drug test took place on April of 2014, and that Mother tested positive for opiates. N.T., 3/10/2015, at 47.

Ms. Johnston further testified that Mother did not complete a parenting capacity evaluation. *Id.* at 11. When asked to complete an evaluation, Mother claims that she has already done so. *Id.* Concerning Mother's housing, Ms. Johnston noted that she encountered Mother during a home assessment of Father's residence in December of 2014. *Id.* at 21. At that time, Mother reported that she did not live with Father, but actually lived next door. *Id.* Ms. Johnston believed that Mother actually is residing with Father, because the residence next door where Mother claimed she was living is in very poor condition. *Id.* at 21-22. Ms. Johnston acknowledged that Father's housing is appropriate. *Id.* at 43, 49. Ms. Johnston also acknowledged that Mother was now visiting Child more frequently than she had in the past. *Id.* at 26, 43.

Thus, the record supports the finding of the trial court that Mother has been incapable of providing Child with the essential parent care, control, and subsistence necessary for her mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity. At the time the court entered its termination decree, on May 15, 2015, Child had been in foster care for almost four and a half years. During that time, Mother failed to attend drug and alcohol and mental health treatment consistently. Mother repeatedly failed to visit Child, failed to complete a parenting capacity evaluation, and failed to maintain housing. While Mother appears to have made some recent progress by visiting Child more

consistently, it is clear Mother simply will not, and cannot, become a capable parent for Child at any point in the foreseeable future. Mother is not entitled to relief.

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

Here, the trial court found that terminating Mother's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 9/18/2015, at 9. The court reasoned that there is no bond between Mother and Child, and that Child will not suffer irreparable harm if Mother's parental rights are terminated. *Id.* at 8-9. The court also observed that Child is bonded with her foster parents, and refers to them as "Mom" and "Dad." *Id.* at 8.

We again conclude that the orphans' court did not abuse its discretion. Ms. Snead testified that Child "doesn't have any bond with mom at all," and that "[t]here's no relationship at all" between Mother and Child. N.T., 9/25/2014, at 11, 13. Ms. Snead noted that Child did not appear interested in spending time with Mother during her visits. *Id.* at 11. Ms. Snead reported that Child is "doing wonderful" in her current foster home. *Id.* at 21. Child calls her foster parents "Mom and [D]ad," and Ms. Snead opined that Child is bonded with her foster parents. *Id.* at 21-22. Ms. Johnston agreed that Child is thriving in her current foster home, where she has resided since she was approximately four months old. N.T., 3/10/2015, at 52, 25. Child treats her foster parents as her parents, and she is "extremely attached to her foster father." *Id.* at 24-25.

Thus, the record supports the conclusion of the trial court that it would best serve Child's needs and welfare to terminate Mother's parental rights. Child has spent nearly her entire life in the same foster home. Child is bonded with her foster parents, and it is abundantly clear that Child should not be removed from their care. In contrast, Child has no bond with Mother, and Child will not suffer irreparable harm if Mother's parental rights are terminated.

Accordingly, our independent review of Mother's claims demonstrates that they do not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. ***See***

*Flowers*, 113 A.3d at 1250. Therefore, we grant counsel's petition to withdraw, and affirm the trial court's decree.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2016